a bold part, issuing documents of the most ultra states' rights tone, and showing that if he had added nothing to the sprightliness, he had lost nothing of the fire, of the pamphleteer of 1795–1800. He died in 1840, when engaged in revising the South Carolina Statutes, a duty charged on him by the legislature, after having published, besides numberless tracts on politics, divinity, and metaphysics, a treatise on the bankrupt laws, a translation of Justinian, a treatise on political economy, a manual of chemistry, as well as a general compendium of useful information.

[The defendant applied to the court for a letter to be addressed to several members of congress requesting attendance as witnesses on his behalf, which motion was refused. See Case No. 14,861.]

---

### Case No. 14,865a.

#### UNITED STATES v. COPELAND.

[2 Hayw. & H. 402.] [1]

Circuit Court, District of Columbia. May Term, 1862.

FUGITIVE SLAVE LAW — DISTRICT OF COLUMBIA — HABEAS CORPUS.

The fugitive slave law of 1850 is as applicable to this District as to any of the states, and as this is a circuit court of the United States its authority to appoint commissioners under that law is clear.

At law. This was a petition of Daniel Breed for a writ of habeas corpus for the discharge of the fugitive [William Copeland].

Before DUNLOP, Chief Judge, and MORSELL and MERRICK, Circuit Judges.

DUNLOP, Chief Judge. It was the duty of the court to decide this matter at once. It is a singular fact that for the first time in sixty years this matter has been contested in this court. The court was established in 1801. Three or four days after, the law of 1793, in regard to fugitive slaves and fugitives from justice, were made applicable to this District. From that time this court has decided all cases, both of fugitive slaves and fugitives from justice escaping from a state into this District, and no contest has heretofore been made. The law is precisely the same in regard to fugitives from justice as in relation to fugitive slaves. Contemporaneous expositions of the law will bear us out in this decision, that the law as applied to states is applicable to this District. Governors of states, including some of the free states, have always put this construction on the law, and made demands upon this court for escaped fugitives. It would be singular if we were required to decide, so as to make this District not only a refuge for all the runaway slaves, but for all the criminals and fugitives from justice of all the states in the Union. Judge Story says that the Union could not have been formed but for the principle which this law allows. This was incorporated into the constitution by a vote of all the states. Maryland and Virginia would

not have consented to the Union if this District was to be a refuge for their fugitives. The one gave the whole Northwest Territory to the federal government, and both ceded ten miles of territory in the center of the United States for a federal capital. It would require language overbearing and powerful to cause us to make a decision which would deprive these states of the right to take their fugitives here. It is our duty to conform to the unanimous decision of the supreme court, and insist upon the enforcement of a law which has been enforced for sixty years. The court insisted that not only the spirit but the letter of the law of 1850 [9 Stat. 462] rendered it strictly applicable to this District. The language is such as to place it beyond all dispute that congress intended to embrace the District in the provisions of this act. It would certainly be an objectionable construction of the law that all slaves which we own are to be brought here, and all slaves escaping here shall stay. In regard to the appointment of commissioners, we contend that our right is clear, under the law of congress, which makes this a circuit court of the United States. The first section of the law of 1850 authorizes the appointment of commissioners by any circuit court of the United States. The man Copeland is now in the lawful custody of a lawful officer, for a lawful purpose, and we do not feel authorized to interfere in this case. Therefore the writ of habeas corpus is refused.

---

### Case No. 14,866.

#### UNITED STATES v. COPPER STILL.

[See Case No. 15,928.]

---

### Case No. 14,867.

#### UNITED STATES v. CORNELL.

[2 Mason, 60.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1819.

COURTS — FEDERAL JURISDICTION — MILITARY POST — CONSENT OF STATE LEGISLATURE.

1. The purchase of lands by the United States for public purposes, within the territorial limits of a state does not of itself oust the jurisdiction or sovereignty of such state over such lands, so purchased

[Cited in Lee v. Kaufman, Case No. 8,191; Ft. Leavenworth R. Co. v. Lowe, 114 U. S. 533, 5 Sup. Ct. 999; Woodfin v. Phœbus, 30 Fed. 297; U. S. v. Penn, 48 Fed. 670.]

[Cited in Foley v. Shriver, 81 Va. 572; Ft. Leavenworth R. Co. v. Lowe, 27 Kan. 762; People v. Collins (Cal.) 39 Pac. 17.]

2. Exclusive jurisdiction is the necessary attendant upon exclusive legislation.

3. The constitution of the United States declares that congress shall have power to exercise "exclusive legislation" in all "cases whatsoever," over all places purchased by the consent of the legislature of the state in which the same shall

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

[1] [Reported by William P. Mason, Esq.]